IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION

| | |
|---|---|
| THOMAS CRAAYBEEK, § § Plaintiff § § v. § § MICHAEL J. ASTRUE, § Commissioner of Social Security, § § Defendant. § | Civil Action No. 7:10-CV-054-BK |

## MEMORANDUM OPINION AND ORDER

Upon the written consent of the parties, this case was transferred to the United States Magistrate Judge for the conduct of all proceedings and the entry of judgment, pursuant to 28 U.S.C. § 636(c).

### I. BACKGROUND

**A.  Procedural History**

Thomas Craaybeek (Plaintiff) seeks judicial review of a final decision by the Commissioner of Social Security (Commissioner) denying his claim for Supplemental Security Income (SSI) under Title XVI of the Social Security Act (Act). On June 27, 2002, Plaintiff applied for SSI, claiming that he was disabled since January 19, 1993, due to neck and back injuries. (Tr. at 89-91, 100).[1]  His application was denied initially and on reconsideration, and Plaintiff timely requested a hearing before an Administrative Law Judge (ALJ). (Tr. at 74). On November 25, 2003, the ALJ issued his decision finding Plaintiff not disabled, which Plaintiff

---

[1] "Tr." refers to the transcript of the administrative proceedings.

timely appealed to the Appeals Council. (Tr. at 7-15, 36-43). The Appeals Council initially denied Plaintiff's appeal and Plaintiff then appealed the decision to the District Court. On August 29, 2008, the Appeals Council remanded Plaintiff's claim for further proceedings pursuant to an agreed order of the District Court. (Tr. at 227-230). Plaintiff personally appeared and testified at a hearing held before the ALJ on December 8, 2010. (Tr. at 319-345). On October 5, 2009, the ALJ issued a second unfavorable decision denying Plaintiff's request for benefits. (Tr. at 217). The Appeals Council denied Plaintiff's request for review and the ALJ's decision became the final decision of the Commissioner. Plaintiff timely appealed the Commissioner's decision to the United States District Court pursuant to 42 U.S.C. § 405(g).

**B.     Factual History**

    **1.     Age, Education, and Work Experience**

Plaintiff was born on August 4, 1964, and was 45 years old at the time of the ALJ's decision. (Tr. at 89, 196, 328). He has a high school education and has prior work experience as a truck driver. (Tr. at 89, 101, 106, 122, 197-98).

    **2.     Medical Evidence**

On August 22, 2002, Plaintiff was examined by Dr. Jagdish Shah. (Tr. at 169-71). Dr. Shah opined Plaintiff had good strength, but lower back pain and loss of sensation at L4, and noted that an MRI would be helpful. (Tr. at 171). In March 2007, Plaintiff was examined by Dr. Mark Mankins. (Tr. at 314). At that examination, Dr. Mankins reported that "there is definitely restriction of range of motion" in Plaintiff's neck and back, and that there may be some diminished sensation in his fingertips bilaterally. (Tr. at 314). Dr. Mankins also reported Plaintiff was alert and in no distress, and neurologically Plaintiff was "pretty well intact." (Tr. at 314). On June 4,

2

2007, Plaintiff was again examined by Dr. Mankins. (Tr. at 313). Dr. Mankins reported tenderness in the upper back and neck area of Plaintiff, diminished sensation in his right arm from shoulder to hand, and that Plaintiff's strength seemed to be well maintained. (Tr. at 313). On May 15, 2009, Plaintiff was once again examined by Dr. Mankins. (Tr. at 304). Dr. Mankins averred Plaintiff was alert and in no distress, Plaintiff's neck revealed limited range of motion, Plaintiff had diminished sensation on his left side L4 area, Plaintiff was tender to palpation in the cervical spine and lumbar spine area, and Plaintiff appeared to have adequate strength in his arms and legs. (Tr. at 304).

On January 12, 2009, Plaintiff had an x-ray and radiologic exam at Insight Diagnostic Center. (Tr. at 301-02). Dr. Dana Fuller opined that Plaintiff had degenerative disc disease at D5-6 with spondylosis, straightening of the normal cervical lordosis, degenerative disc disease with mild disk space narrowing at L3-4, and mild spondylosis at L3-4 and L4-5. (Tr. at 301-03).

On January 12, 2009, Dr. Richard Jones completed a report based on a review of medical records and a physical examination. (Tr. at 293). Dr. Jones reported Plaintiff had spina bifida at S1, moderate degenerative disk disease at L3-4, degenerative osteophyte at L4, narrowing of the cervical C4-5 with osteophyte lipping, and disease lordotic curvature. (Tr. at 293). Dr. Jones also opined Plaintiff was well nourished, strong, had good posture and walked normally, and his ability to sit, stand, move about, lift and carry objects seemed to be relatively unimpaired. (Tr. at 294).

On January 29, 2009, Dr. Jones also completed a medical source statement regarding Plaintiff's ability to perform work related activities. (Tr. at 295-300). Dr. Jones opined that Plaintiff could lift and carry up to 20 pounds occasionally; that in an eight-hour day, Plaintiff could sit for 2 hours, stand for 1 hour and walk for 1 hour without interruption; sit, stand, and

3

walk 2 hours each and should lie down the remaining 2 hours; that reaching, handling, fingering, pushing/pulling, and operation of foot controls could be performed occasionally; that Plaintiff should never climb, balance, stoop, kneel, crouch, or crawl; and that Plaintiff was not able to handle stress or heightened levels of cognitive functioning because he "gets agitated." (Tr. at 295-300).

### 3. Hearing Testimony

The ALJ held three separate hearings; one in July 2003, one in December 2008, and one in July 2009. On July 10, 2003, Plaintiff appeared and testified before the ALJ. (Tr. at 178-205). Plaintiff was not represented by counsel and waived his right to a representative. (Tr. at 196). Plaintiff testified that he had been receiving SSI benefits until he was incarcerated. (Tr. at 184). Plaintiff testified he suffers from extensive degeneration through the spine, has a bulging disc, and torticollis where the muscles on one side of the neck "start tightening up," but has never had any surgery. (Tr. at 185). When Plaintiff was previously found disabled, his torticollis was more of a problem. (Tr. at 189).

Plaintiff lives in a house with his wife, has his high school education, and worked as a truck driver until 1998. (Tr. at 197-98). Plaintiff's back problems stem from a car accident in 1990, and his symptoms get worse with stress, changes in weather, and activity. (Tr. at 198). Plaintiff spends his days "basically tincker[ing] until . . . [he] get[s] tired." (Tr. at 199). In addition, Plaintiff helps out with the dishes and goes to "AA" once a week. (Tr. at 200). Plaintiff has been to truck driving school, diesel school, and computer school. (Tr. at 201).

At the hearing held on December 8, 2008, Plaintiff personally appeared and was represented by counsel. (Tr. at 321.) Plaintiff testified that he has difficulty moving around and

has pain that runs down his left leg. (Tr. at 331). If Plaintiff is exposed to too much heat, he starts "blacking out." Plaintiff has trouble concentrating, holding things, and balancing. (Tr. at 331). Plaintiff's torticollis has straightened out. (Tr. at 331). However, Plaintiff reported problems with his neck and lower back. (Tr. at 332). Plaintiff can walk about 100 yards with his cane, can only sit for about 20 minutes, can stand for 15-20 minutes, and cannot bend over to pick things up off the floor. (Tr. at 333). Plaintiff can lift 20 pounds and can kneel down and get back up. (Tr at 334). In addition, Plaintiff stated that he suffers from anxiety and depression. (Tr. at 340).

On July 21, 2009, John Vorhies, a medical expert, and Joyce Shoop, a vocational expert, testified before the ALJ. (Tr. at 346). Dr. Vorhies opined that Plaintiff suffers from chronic neck and back pain syndrome, and minor degenerative disc and joint disease of the neck and back. (Tr. at 351). Dr. Vorhies additionally stated Plaintiff does not meet or equal Listing 1.04. (Tr. at 352). Furthermore, Dr. Vorhies opined that, based on Dr. Jones's report, Plaintiff's ability to sit, stand, move about, lift and carry objects was unimpaired, and that Plaintiff could occasionally lift up to 20 pounds. (Tr. at 352). Ms. Shoop opined that Plaintiff could "do [his past work as a truck driver] as performed" because he did not have to unload the trucks. (Tr. at 355-56, 359).

## C.    ALJ's Findings

In his decision dated October 5, 2009, the ALJ found Plaintiff had not engaged in any substantial gainful activity since June 27, 2002, the alleged onset date. (Tr. at 217). Plaintiff had the severe impairments of cervical and lumbar degenerative disc disease, chronic back pain, anxiety and depression. (Tr. at 217). Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. §§

5

416.920(d), 416.925, 416.926. (Tr. at 217). Plaintiff had a residual functional capacity (RFC) to perform a full range of light work as defined in 20 C.F.R. § 416.967(b). (Tr. at 218). Finally, the ALJ determined Plaintiff was able to perform his past relevant work as a truck driver and, therefore, Plaintiff was not disabled. (Tr. at 222).

## II.  ANALYSIS

A.  **Legal Standards**

   1.  **Standard of Review**

Judicial review of the Commissioner's denial of benefits is limited to whether the Commissioner's position is supported by substantial evidence and whether the Commissioner applied proper legal standards in evaluating the evidence. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994); 42 U.S.C. §§ 405(g), 1383(C)(3). Substantial evidence is defined as more than a scintilla, less than a preponderance, and as being such relevant and sufficient evidence as a reasonable mind might accept as adequate to support a conclusion. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). In applying the substantial evidence standard, the reviewing court does not re-weigh the evidence, retry the issues, or substitute its own judgment, but rather, scrutinizes the record to determine whether substantial evidence is present. *Greenspan*, 38 F.3d at 236. A finding of no substantial evidence is appropriate only if there is a conspicuous absence of credible evidentiary choices or no contrary medical findings. *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988).

The scope of judicial review of a decision under the SSI program is identical to that of a decision under the social security disability program. *Davis v. Heckler*, 759 F.2d 432, 435 (5th Cir. 1985). Moreover, the relevant law and regulations governing the determination of disability

6

under a claim for DIB are identical to those governing the determination under a claim for SSI. *See id.* Thus, the Court may rely on decisions in both areas, without distinction, in reviewing an ALJ's decision. *See id.*

## 2. Disability Determination

The definition of disability under the Social Security Act is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner utilizes a sequential five-step inquiry to determine whether a claimant is disabled:

1. An individual who is working and engaging in substantial gainful activity will not be found disabled regardless of medical findings.

2. An individual who does not have a "severe impairment" will not be found to be disabled.

3. An individual who "meets or equals a listed impairment in Appendix 1" of the regulations will be considered disabled without consideration of vocational factors.

4. If an individual is capable of performing the work he has done in the past, a finding of "not disabled" must be made.

5. If an individual's impairment precludes him from performing his past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if work can be performed.

*Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991) (summarizing 20 C.F.R. §§ 404.1520(b)-(f), 416.920 (b-(f)). Under the first four steps of the analysis, the burden lies with the claimant to prove disability. *Leggett*, 67 F.3d at 564. The analysis terminates if the Commissioner

determines at any point during the first four steps that the claimant is disabled or is not disabled. *Id.* Once the claimant satisfies his or her burden under the first four steps, the burden shifts to the Commissioner at step five to show that there is other gainful employment available in the national economy that the claimant is capable of performing. *Greenspan*, 38 F.3d at 236. This burden may be satisfied either by reference to the Medical-Vocational Guidelines of the regulations or by expert vocational testimony or other similar evidence. *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987).

### 3. Standard for Finding of Entitlement to Benefits

Plaintiff asks the Court to reverse the Commissioner's decision and, in the alternative, to remand for further proceedings. (Pl. Brief at 9).

When an ALJ's decision is not supported by substantial evidence, the case may be remanded "with the instruction to make an award if the record enables the court to determine definitively that the claimant is entitled to benefits." *Armstrong v. Astrue*, No. 1:08-CV-045-C, 2009 WL 3029772, *10 (N.D. Tex. Sept. 22, 2009) (adopting recommendation of Mag. J.). The claimant must carry "the very high burden of establishing 'disability without any doubt.'" *Id.* at *11 (citation omitted). Inconsistencies and unresolved issues in the record preclude an immediate award of benefits. *Wells v. Barnhart*, 127 F. App'x 717, 718 (5th Cir. 2005). The Commissioner, not the court, resolves evidentiary conflicts. *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000).

**B.     Issue for Review**: **Was the ALJ's RFC finding supported by substantial evidence?**

While Plaintiff's argument is framed as whether substantial evidence supports the ALJ's RFC determination, Plaintiff raises several additional arguments. Plaintiff states that "the ALJ's finding that Plaintiff is not disabled is not supported by substantial evidence and is the result of

legal errors." (Pl. Mot. at 4). Specifically, Plaintiff argues that the ALJ's RFC finding that Plaintiff is able to perform a full range of light work is not supported by substantial evidence because the ALJ failed to consider or include Plaintiff's mental impairments or any limitations indicated by Dr. Jones in the RFC finding. (Pl. Mot. at 4-8). In addition, in one sentence Plaintiff briefly argues the ALJ's decision results from legal error because "the severity standard referenced by the ALJ is inconsistent with the severity standard actually indicated in *Stone*." (Pl. Mot. at 4). Therefore, the Court will first address whether the ALJ applied the proper legal standard in determining whether Plaintiffs impairments were severe or non-severe despite Plaintiff's Counsel's failure to adequately brief the issue.

Pursuant to the Commissioner's regulations, a severe impairment is "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c); *Charlton v. Astrue*, No. 10-CV-0056, 2010 WL 3385002 at *6 (N.D. Tex. July 14, 2010). A literal application of these regulations is inconsistent with the Act because the definition includes fewer conditions than indicated by statute. *See Stone v. Heckler*, 752 F2d 1099, 1104-05 (5th Cir. 1985); *Charlton*, 2010 WL 3385002 at *6-7. Therefore, the Fifth Circuit holds that an impairment is not severe "only if it is a slight abnormality having such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." *Stone*, 752 F.2d at 1101; *Charlton*, 2010 WL 3385002 at *6-7. Further, the determination of severity may not be "made without regard to the individual's ability to perform substantial gainful activity." *Stone*, 752 F.2d at 1104; *Charlton*, 2010 WL 3385002 at *6-7.

In *Stone*, the Fifth Circuit held that it would assume that the "ALJ and Appeals Council

9

have applied an incorrect legal standard to the severity requirement unless the correct standard is set forth by reference to [the *Stone* opinion] or another of the same effect, or by an express statement that the construction we give to 20 C.F.R § 404.1520(c) is used." *Stone*, 752 F.2d at 1106. Nevertheless, the Court must look beyond the use of "magic words" and determine whether the ALJ applied the correct severity standard. *Hampton v. Brown*, 785 F.2d 1308, 1311 (5th Cir. 1986); *Charlton*, 2010 WL 3385002 at *6-7 (citation omitted). Unless the correct standard of severity is used, the claim must be remanded to the Commissioner for reconsideration. *Stone*, 752 F.2d. at 1106.

Here, the ALJ cited the *Stone* opinion. Nonetheless, when setting out the law in his opinion, the ALJ stated that an "impairment or combination of impairments is 'severe' within the meaning of the regulations it if significantly limits an individual's ability to perform basic work activities." (Tr. at 216). This is the very standard set forth in 20 C.F.R. §§ 404.1520(c), 416.920(c), that *Stone* found to be inconsistent with the Social Security Act. *Stone*, 752 F.2d at 1104-05; *Charlton*, 2010 WL 3385002 at *6. The ALJ also stated that "an impairment or combination of impairments is 'not severe' when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on the individual's ability to work." (Tr. at 216) (citing to 20 C.F.R. § 416.921; SSRs 85-28, 96-3p, 96-4p). The "minimal effect" standard is also wholly inconsistent with *Stone*. *See Charlton*, 2010 WL 3385002 at *6; *Ruby v. Astrue*, No. 3:08-CV-1012, 2009 WL 4858060 at *8 (N.D. Tex. Dec. 14, 2009).

The United States District Court for the Northern District of Texas is uniform in its refusal to find that the standard applied in this case is the standard set out in *Stone*. *See Ruby*, 2009 WL

4858060 at *8; *Charlton*, 2010 WL 3385002 at *6-7; *Roberson v. Astrue*, No. 3:10-CV-0240, 2010 WL 3260177 at * 9-10 (N.D. Tex. Aug. 17, 2010); *Sanders v. Astrue*, No. 3:07-CV-1827, 2008 WL 4211146 at *7 (N.D. Tex Sept. 12, 2008). The ALJ's standard recognized that a non-severe impairment could have a minimal effect on Plaintiff's ability to work, while *Stone* holds that a non-severe impairment would not be expected to interfere with Plaintiff's ability to work. *Foster v. Astrue*, No. H-08-2843, 2010 WL 1340671 at *12-13 (S.D. Tex. March 30, 2010). Although the United States District Court for the Northern District of Texas has recognized that the difference between the two statements may appear to be slight, the ALJ's construction is not an express statement of the *Stone* standard. *Ruby*, 2009 WL 4858060 at * 8.

Generally, appeals from administrative agencies of a procedural error will not lead to a vacated judgment "unless the substantial rights of the parties have been affected." *Roberson*, 2010 WL 3260177 at * 10 (citations omitted). However, the ALJ's failure to apply the *Stone* standard is a legal error, not a procedural error. *Id*. The Fifth Circuit has left the lower courts no discretion to determine whether such an error is harmless. *Id*. Rather, in *Stone*, the Fifth Circuit mandated that, "unless the correct standard is used, the claim must be remanded to the Secretary for reconsideration." *Stone*, 752 F.2d at 1106.

A case will not be remanded simply because of the use or non-use of "magic words," but will be remanded only where, as here, there is no indication the ALJ applied the correct standard. *Hampton*, 785 F.2d at 1311. Thus, we must read the opinion of the ALJ carefully to ensure he or she used the "slight impairment" standard in the nonseverity determination. *Id*. While the ALJ cites to *Stone*, the standard cited is not the standard used in *Stone*, but rather the standard *Stone* found to be inconsistent with the Act. At the very least, the express recitation of a standard

11

inconsistent with the *Stone* standard creates an ambiguity and this ambiguity regarding whether the correct legal standard was used must be resolved at the administrative level. *Charlton*, 2010 WL 3385002 at *7; *Roberson*, 2010 WL 3260177 at *10. Therefore, Fifth Circuit precedent requires that this case be remanded because the ALJ applied an incorrect legal standard of severity at Step 2. *Stone*, 752 F.2d at 1106. Because remand is required for failure to apply the proper severity standard at Step 2, the Court need not consider Plaintiff's other issues for review.

### III. CONCLUSION

The decision of the Commissioner is **REVERSED** and the case is **REMANDED** for further proceedings consistent with this opinion.

**SO ORDERED** on February 7, 2011.

_____
RENÉE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE